IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ARMON WAYNE THURMAN, #259079 | § | |
| VS. | § | CIVIL ACTION NO. 6:06cv127 |
| WARDEN BISCOE, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Armon Wayne Thurman a.k.a. Thurmon W. Armon, an inmate confined at the Beto Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The present lawsuit originated as a result of a post-judgment motion filed in *Thurman v. Dretke*, Civil Action No. 6:05cv256. On March 21, 2006, the Court issued an order to file the motion as a new lawsuit. The post-judgment motion, hereinafter "complaint," contained allegations of denial of proper medical treatment. The Defendants were Warden Biscoe, Dr. H. Clayton and two unidentified security officers. After reviewing the complaint, the Court decided to conduct an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted on July 6, 2006. Regional Grievance Coordinator Chip Satterwhite, Assistant Warden Kevin Moore and Nurse Barbara Hughes attended the hearing in order to answer any questions the Court may have concerning the Plaintiff's security or medical records.

Only sworn testimony and authenticated records were accepted during the *Spears* hearing, and the evidence submitted by prison personnel was considered by the Court only to the extent that it does not contradict the inherently plausible and credible evidence offered by the Plaintiff. *Vernado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). The Plaintiff gave the Court permission to review his prison records.

The Plaintiff initially testified that he wanted to dismiss Warden Biscoe from the lawsuit. He subsequently testified that he wanted to dismiss the unidentified security officers. Dr. Clayton was thus the sole remaining defendant. The Court noted that the Plaintiff listed numerous ailments in his complaint, including heart trouble, high blood pressure, C.O.P.D. (lung and breathing disorder), seizure disorder, Neglis Aplastic Anemia (a form of leukemia) and Hepatitis C. The Plaintiff agreed and stressed that he was not receiving proper medical care for these problems. He specifically complained that he normally does not see Dr. Clayton for his ailments; instead, he sees nurses and physician's assistants.

The Plaintiff testified that he has not received medication for Hepatitis C. He testified that his liver enzyme tests have been high, although it was last tested on September 28, 2005. Nonetheless, he has not been given medication. He testified that he has been provided medication for heart problems and high blood pressure. He complained that his blood count for anemia is not regularly monitored. He had to have a transfusion when he was still confined at the Stiles Unit. He received another four pints of blood since his arrival at the Beto Unit when he was taken by emergency to the Palestine Hospital. The Plaintiff noted that the only thing medical personnel can do is to monitor him and give him transfusions when necessary. The prison system will not give him a bone marrow transplant, but officials likewise have failed to sufficiently monitor him.

The Plaintiff testified that Dr. Clayton is the head of the medical facility at the Beto Unit. He complained that he does not see Dr. Clayton very often; instead, he sees a nurse or physician's assistant. He testified that the primary problem is that nurses and physician's assistants are not as knowledgeable as a doctor, and his condition warrants attention from a doctor. The nurses and physician's assistants can handle routine matters, but he needs to see Dr. Clayton for more serious matters. He noted that he has filed many grievances, and he believes that he is not being seen by Dr. Clayton due to deliberate indifference and retaliation.

The Plaintiff also testified about a recent emergency motion he filed for a preliminary injunction relief (docket entry #19). He alleged that security personnel have stopped all of his outgoing legal mail since this case was set for a hearing. He attached a copy of another motion for a preliminary injunction that was returned to him. The Court notes that the present motion for a preliminary injunction was filed.

Nurse Hughes testified under oath from the Plaintiff's original medical records. She noted that he has many medical problems and it appears that he has been receiving numerous medications for them. He is listed in several chronic clinics. He is seen most often for severe COPD. With respect to Hepatitis C, Nurse Hughes testified that treatment is not provided unless the ALT test is over 100 three out of four times. A high normal ALT reading is 51. The Plaintiff's ALT tests have generally been normal, although on one occasion it was 145 and then 20 on the following occasion. Nurse Hughes testified that a variety of factors can cause a particular ALT test to be high. The only entry she found from Hospital Galveston was in April, 2005, and his blood count for anemia was normal at that time. He has been diagnosed with anemia, but there was no mention of leukemia. If his hemoglobin is very low, then he will be given a transfusion and iron supplements.

The Plaintiff has given the Court permission to review his records, including his medical records. The Plaintiff's medical records compiled beginning in 2005 are massive. The records confirm that most of the entries are signed by either a nurse or a physician's assistant. Dr. Clayton, however, has signed a number of entries. Prior to his arrival at the Beto Unit, the Plaintiff's problem with anemia was documented in a physician's note and listed as first observed in 2002. The first physician's note signed by Dr. Clayton was on July 26, 2005. He listed the Plaintiff's problems, medications and plan of action. He noted ALT blood tests of 20 on June 17, 2005, and 31 on April 2, 2005. Another ALT test on September 19, 2005 was 51. On August 10, 2005, Dr. Clayton noted the Plaintiff's problems with a hernia. He referred the Plaintiff to general surgery. More recently, on April 4, 2006, Dr. Clayton prepared an extensive physician's note. He noted that the Plaintiff's name has been included in chronic care clinics for seizure disorder, hypertension, asthma, Hepatitis C and COPD (Chronic Obstructive Pulmonary Disease). He noted that the Plaintiff has been diagnosed with the following problems: acute bronchitis, angina pectoris, asthma, back disorder, COPD, dental and mental health cars, Hepatitis C, hiatal hernia, HIV high risk, hypertension, seizure disorder and TB Class 2. Thirteen medications were listed. The medical records also reveal that Dr. Clayton signed prescriptions on July 26, 2005; August 10, 2005; November 14, 2005; November 22, 2005; February 27, 2006; March 14, 2006;  and April 12, 2006.

The medical records also include entries from the University of Texas Medical Branch for emergency medical care for anemia in January, 2006. He was admitted on January 17, 2006, and discharged on January 25, 2006. Dr. Holland was the attending physician. The Plaintiff's anemia and other medical problems were discussed in the discharge summary. The Plaintiff's condition was described as fair. The discharge summary also included a recommendation for a follow-up exam in

the hematology clinic in three to four weeks. It is unclear whether the Plaintiff was subsequently seen in the hematology clinic.

The first issue for consideration is the Plaintiff's oral motion to dismiss the claims against Warden Biscoe and the two unidentified security officers. A plaintiff is entitled to voluntarily dismiss a case prior to the service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs. Fed. R. Civ. P. 41(a)(1). The Defendants have not filed an answer or any other responsive pleading in the case. The motion to dismiss should be granted.

The next issue to consider concerns the medical care provided to the Plaintiff. The sole defendant is Dr. H. Clayton. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

5

>disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). Complaints about inadequate medical care does not involve a violation of federal rights. *See Estelle v. Gamble*, 429 U.S. at 107; *Jackson v. Cain*, 864 F.2d at 1244; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Similarly, a disagreement with the treatment provided by a doctor does not rise to the level of a constitutional violation. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). A prisoner does not have a basis for a potentially meritorious civil rights claim for deliberate indifference where he received medical care by medical personnel under the direction of a doctor, although the doctor was not physically present at a prison unit. *See Smallwood v. Alexander*, 68 F.3d 472 (5th Cir. 1995) (unpublished).

In the present case, the Plaintiff has received extensive medical care by medical personnel under the direction of Dr. Clayton. Dr. Clayton has issued instructions as to the care to provide to the Plaintiff, particularly with respect to medications. The Plaintiff was provided emergency medical care at John Sealy Hospital in Galveston and in the Palestine Hospital when it was necessary. The Plaintiff's testimony and medical records do not support an inference of deliberate indifference on the part of Dr. Clayton. Moreover, he does not have a basis for a deliberate indifference claim just because he cannot see Dr. Clayton in person every time he wants to see him. The deliberate indifference claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.

The Plaintiff also complained about retaliation. He assumed that people retaliated against him due to his grievances and involvement in past lawsuits, such as the *Ruiz* class action lawsuit, although he was unable to identify Dr. Clayton as a person who engaged in retaliation. To state a

6

valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). For example, the law is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996).

In the present case, the Plaintiff has not shown that Dr. Clayton was involved in any acts of retaliation. Instead, he presented only vague and conclusory allegations of retaliation that were premised on speculation that people engaged in actions because of his history of grievances and lawsuits. His retaliation claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks an basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also noted that he sued Dr. Clayton since he was responsible for the medical care provided at the Beto Unit.  In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).  Dr. Clayton did not participated in any alleged acts of misconduct.  The only other way he could possibly be implicated in these claims is through his supervisory capacity.  Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory.  A supervisor may be held liable if either of the following exists:  (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987).  Neither condition is satisfied.

Finally, the Plaintiff has sought an emergency preliminary injunction.  A preliminary injunction is typically granted, pending trial on the merits, to prevent irreparable injury that may result before a dispositive trial. *Shanks v. City of Dallas, Texas*, 752 F.2d 1092, 1096 (5th Cir. 1985).  The measures are designed to protect, for example, the *status quo* of the parties or the evidence the movant will need to use at trial to litigate his claims.  To grant or deny a preliminary injunction is within the discretion of the trial court. *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984).

The prerequisites for a preliminary injunction are:  (1) substantial likelihood that the moving party will prevail on the merits of the underlying suit, (2) a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to the movant outweighs the threatened harm the injunction may do to the nonmovant, and (4) that granting the preliminary injunction will not disserve the public interest. *Libertarian Party of Texas v.*

*Fainter*, 741 F.d 2d 728, 729 (5th Cir. 1984). Since a preliminary injunction is such an extraordinary, and perhaps drastic remedy, one is not granted unless the movant clearly carries the onerous burden of persuasion as to all the elements. *United States v. Jefferson County*, 720 F.2d 1511, 1519 (5th Cir. 1983).

In the present case, the Plaintiff has not shown that he will prevail on the merits of the claims contained in his original complaint. Indeed, the case should be dismissed. Secondly, the Plaintiff did not clearly prove that he will suffer irreparable injury if the injunction is not granted. Thirdly, he did not show that the threatened injury outweighs the harm of an injunction. Finally, he failed to show that the injunction would not disserve the public interest. The Plaintiff has failed to clearly carry the burden of persuasion on any of the four prerequisites required to establish the need for a preliminary injunction. It is accordingly

**ORDERED** that the claims against Warden Biscoe and two unidentified security officers are **DISMISSED** without prejudice pursuant to Rule 41(a)(1). It is further

**ORDERED** that the motion for Rule 65 enjoinder order (docket entry #19) is **DENIED**. It is further

**ORDERED** that the Plaintiff's claims against Dr. H. Clayton are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **19** day of **July, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE